# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISRICT OF PENNSYLVANIA

MELISSA ANN FABIAN,　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　Plaintiff,　　　　　　　　　） No. 13-1569
　　　　　　　　　　　　　　　　
　　　V.　　　　　　　　　　　　
　　　　　　　　　　　　　　　　
CAROLYN W. COLVIN,
Commissioner of Social
Security,

　　　Defendant.

## SYNOPSIS

Plaintiff filed an application for supplemental social security income under Title XVI, of the Social Security Act.  Plaintiff alleged disability due to physical and mental impairments related to a coma, with a date of onset of April 5, 2010.  In April, 2010, Plaintiff was admitted to the hospital in a coma resulting from an overdose of various medications.  It is unclear whether the overdose was intentional or unintentional.  After recovering from the coma, she suffered encephalopathy and various mental disorders; she subsequently began mental health treatment.  Plaintiff's application was denied initially, and upon hearing before an Administrative Law Judge ("ALJ").  The Appeals Council denied her request for review.  Plaintiff now appeals to this Court.  For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied, and this matter remanded for further proceedings.

## OPINION

### I.  STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review

the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947).    Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. PLAINTIFF'S MOTION

Plaintiff objects to the ALJ's Opinion for two reasons:  1) the ALJ's treatment of the opinion of Dr. Mandoly, Plaintiff's treating psychiatrist at Staunton Clinic; and 2) the ALJ's

treatment of the conflicting opinions of Drs. Rydze and Kar, both of whom opined on Plaintiff's physical condition.

## A. MENTAL LIMITATIONS

The record contains several medical opinions regarding Plaintiff's mental condition. Dr. Mandoly, a psychiatrist, completed an April 10, 2011 questionnaire, on which he concluded that Plaintiff was unable to work. He also noted that she was a malingerer. He noted that Plaintiff had been seen twice for psychiatric appointments, and also noted resistance to individual therapy. His diagnostic impression was schizoaffective disorder, and he opined that Plaintiff had "no useful ability to function" in two categories relating to mental abilities and aptitudes, was "unable to meet competitive standards" in thirteen categories, and "seriously limited" in eight categories.

Dr. Nussbaum, a state agency examining psychologist, diagnosed Plaintiff with major depression, recurrent with psychotic features, with a guarded to poor diagnosis; he was under the impression that Plaintiff provided reliable information during the examination. He found Plaintiff moderately limited with respect to understanding, remembering, and carrying out detailed instructions, and making judgments on simple work-related decisions. He found slight to moderate limitations on interacting with people, and to responding appropriately to pressures and changes in a work setting.

A state agency non-examining consultant, Dr. Jonas, completed a mental RFC assessment. Dr. Jonas found Plaintiff moderately limited in several areas, including the abilities to understand, remember, and carry out detailed instructions, to perform activities within a schedule, maintain regular attendance, and be punctual, and to make simple work-related decisions. He also found her moderately limited in the ability to complete a normal workday

and work week without interruptions from psychologically-based symptoms, and to perform at a consistent pace without unreasonable rest periods; to respond appropriately to changes in the work setting; and to travel in unfamiliar places or use public transportation.  He found her markedly limited in the ability to be aware of normal hazards and take appropriate precautions.

It is a "cardinal principle" in disability cases that treating physicians' reports are entitled to great weight.  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  A treating physician is one with whom a patient has an "ongoing treatment relationship"; the phrase refers to a doctor that the patient has seen "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)."  20 C.F.R. 404.1502.

With regard to Dr. Mandoly, the ALJ stated that she considered his opinion "indicating that the claimant would be limited in her ability to carry out detailed instructions and deal with normal work stress."  The ALJ presumed that Dr. Mandoly's opinions were "the result of a longitudinal treating relationship."  She did not specify the weight given Dr. Mandoly's opinions, but clearly did not fully adopt the opinions.[1]  The ALJ noted that Plaintiff had only seen Dr. Mandoly twice, that Dr. Mandoly noted that Plaintiff resisted treatment, that recent notes reflected that her condition was stable, and that Dr. Mandoly had noted malingering.

In the first instance, although the April, 2011 questionnaire indicates that he had seen Plaintiff twice at that point, other notes suggest that he oversaw her treatment by therapists at the same facility.  In considering "recent treatment notes" from Staunton Clinic reflecting a stable condition, the ALJ clearly was not restricting her consideration to treatment at Dr. Mandoly's facility prior to his 2011 report.   However, the ALJ did not refer to treatment records between May 26, 2011 and December 1, 2011, which appear to reflect additional visits with Dr. Mandoly.

---

[1] The non-exertional RFC states, in its entirety, that Plaintiff "is limited to simple, routine repetitive unskilled work with decision-making only within fixed parameters."

The ALJ also appears to have discounted Dr. Mandoly's opinion because Plaintiff's condition is stable with therapy and medication. Our Court of Appeals has cautioned that "a doctor's observation that a patient is 'stable and well controlled with medication' during treatment does not [necessarily] support the medical conclusion that [the patient] can return to work." Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 356 (3d Cir. 2008). Regarding resistance to treatment, Dr. Mandoly stated that, at the time of his report, Plaintiff was resistant to individual therapy after the expiration of her involuntary outpatient treatment plan, although she had to date attended 5 individual therapy sessions. There is no suggestion that Plaintiff was resistant to all treatment, as the ALJ implies; instead, the record reflects that she underwent various treatment modalities. Moreover, ALJ did not consider whether Plaintiff's resistance was attributable to her mental impairment. Cf. Pacheco v. Colvin, 2014 US Dist. LEXIS 29883 (D. Utah Feb. 13, 2011). Finally, after the hearing before the ALJ, by correction dated May 21, 2012, Dr. Mandoly corrected the erroneous note that Plaintiff was a malingerer, and instead noted that she was not a malingerer.

As discussed supra, the ALJ did not specify the weight given Dr. Mandoly's opinion; nor is there any suggestion that she considered all of the serious limitations that Dr. Mandoly noted, other than the two that the ALJ specifically mentions. I recognize that an ALJ is not required to explicitly state the weight of every piece of evidence. Mellor-Milam v. Comm'r of Soc. Sec., 2014 U.S. Dist. LEXIS 178247, at *30 (D.N.J. Dec. 30, 2014). Nonetheless,

> An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence." In those instances, "[e]ven where there is contradictory medical evidence, . . . and an ALJ decides not to give a treating physician's opinion controlling weight, the ALJ must still carefully evaluate how much weight to give the treating physician's opinion."

Gebhart v. Astrue, 2014 U.S. Dist. LEXIS 64732, at *59 (D. Del. May 12, 2014) (footnotes omitted).

Here, Dr. Mandoly is a treating physician. The ALJ did not refer to any record evidence that contradicted Dr. Mandoly's opinion, stating only that "certain aspects" of the opinion were consistent with the RFC. Moreover, it is unclear what weight she did afford Dr. Mandoly's opinion, and it is unclear why she did not address the multiple limitations that he found. Given that he was Plaintiff's treating physician, and that the record does not reflect evidence that contradicts that opinion – instead, reports by Drs. Nussbaum and Jonas appear supportive of Dr. Mandoly's opinion – remand is justified. On remand, the ALJ should consider, or further or further explain her approach to, Dr. Mandoly's opinions.[2]

Regarding Plaintiff's physical condition, Plaintiff contends that the ALJ failed to explain his decision to accept the opinion of Dr. Kar over that of Dr. Rydze. Examining consultant Dr. Rydze, and non-examining consultant Dr. Kar, offered opinions regarding Plaintiff's physical condition. Dr. Rydze determined that Plaintiff would be limited to standing and walking one hour or less and sitting two hours in an eight hour workday. Dr. Kar, however, noted that Plaintiff could stand and walk for two hours in an eight hour workday, and sit for six hours. Dr. Kar explained his disagreement with Dr. Rydze's report, stating that Dr. Rydze relied heavily on Plaintiff's subjective complaints, as well as a brief clinical encounter, which were not supported by the totality of the evidence. Indeed, Dr. Rydze did not specify the bases for his conclusions

---

[2] On remand, because the ALJ relied in part on the now-corrected statement regarding malingering, the ALJ may consider Dr. Mandoly's revised questionnaire. In a similar vein, the ALJ considered Dr. Godse's September 13, 2010 form indicating that Plaintiff was disabled. Because the form contained no findings, narrative report, or explanation, the ALJ gave it little weight. It is true that the determination of disabled status for purposes of receiving will not be affected by a medical source simply because it states that a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Nonetheless, Dr. Godse appears to have had a long-time treating relationship with Plaintiff, beyond that reflected in the single form that the ALJ referenced; it is not apparent that Dr. Godse's other records were considered. For example, on April 3, 2010, Dr. Godse stated that she had been seeing Plaintiff for four years. On remand, the ALJ may reconsider, or consider in the first instance, Dr. Godse's records.

regarding Plaintiff's limitations.  The ALJ clearly adopted a position similar to that taken by Dr. Kar, stating that the record as a whole substantiated Dr. Kar's opinion.  The ALJ is entitled to weigh the evidence in this manner, and I find no error.

## CONCLUSION

In conclusion, this matter will be remanded for reconsideration of, or further explanation of the treatment of, the opinions of Dr. Mandoly.  An appropriate Order follows.

## ORDER

AND NOW, this 29th day of January, 2015, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is GRANTED, and Defendant's DENIED.  This matter is remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court